UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JUSTIN D. REED, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 2:11 CV 153 |
| | ) |
| DR. RICHARD J. RODARTE, M.D., | ) |
| an individual; HAMMOND CLINIC, | ) |
| an Indiana business entity; and NORFOLK | ) |
| SOUTHERN RAILROAD, a corporation, | ) |
| | ) |
| Defendants. | ) |

## OPINION and ORDER

This matter is before the court on the motion of defendants Richard J. Rodarte, M.D., and the Hammond Clinic (herein, often referred to collectively as "Dr. Rodarte," for the sake of convenience) to dismiss plaintiff's claims against them. (DE # 40.) For the reasons set forth below, the motion is denied.

Plaintiff Justin Reed filed the present lawsuit claiming that he was injured on the job and taken by his employer to Dr. Rodarte at the Hammond Clinic for treatment. (DE # 1 at 2-3.) Plaintiff alleges that he never signed a medical release for any of his information. (*Id.* at 3.) Plaintiff alleges that Dr. Rodarte diagnosed plaintiff with a sexually transmitted disease as the cause of plaintiff's abdominal and groin pain, and stated that his injury was not related to work activity. (*Id.*) Plaintiff further alleges that Dr. Rodarte conveyed this information verbally to plaintiff's employer, and put the information in a medical record that the employer also was given. (*Id.*) According to

plaintiff, the news of his supposed sexually transmitted disease was circulated widely amongst his co-workers. (*Id.*)

Though plaintiff alleges that the diagnosis was incorrect, and that he later received a second opinion stating otherwise (*id.* at 4), the crux of his complaint is not the alleged misdiagnosis itself. Instead, plaintiff's complaint – as against Dr. Rodarte and the Hammond Clinic – focuses entirely on the violation of his privacy rights. (*See id.* ¶¶ 1, 18.) Specifically, plaintiff sues under the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. § 1320 *et seq.*[1], state privacy laws, and state defamation laws. (*Id.*) Plaintiff also apparently intends to pursue some cause of action against his employer and Dr. Rodarte for violations of unnamed regulations related to occupational medicine ethics. (*Id.* ¶ 18.)

Dr. Rodarte argues that plaintiff's claims constitute medical malpractice, meaning that under the Indiana Medical Malpractice Act (the "Act") plaintiff was required to obtain an opinion from a state medical review panel prior to filing suit. Dr. Rodarte asserts that because no medical review panel opinion has been issued, either: (i) this court lacks subject-matter jurisdiction under RULE 12(b)(1); or (ii) plaintiff fails to state a claim upon which relief can be granted under RULE 12(b)(6).

Dr. Rodarte suggests the former option, because in Indiana's state court system, failure to comply with the Act results in a lack of the state court's jurisdiction. But he

---

[1] The record indicates that plaintiff plans to voluntarily dismiss his claim under HIPAA (DE # 44 at 5), perhaps because HIPAA provides no private right of action for violations of its provisions. *Carpenter v. Phillips,* 419 Fed. Appx. 658, 659 (7th Cir. 2011).

also offers the latter alternative, because Judge Robert Miller of this District has held that RULE 12(b)(6) provides a more appropriate posture for cases like this one filed in federal court. (DE # 51.) As Judge Miller noted, "The Indiana General Assembly doesn't decide the jurisdiction of the federal courts, so the legislative prohibition on court action doesn't affect this court's subject-matter jurisdiction." *Estate of Rice ex rel. Rice v. Corr. Med. Servs.*, 596 F. Supp. 2d 1208, 1225 (N.D. Ind. 2009)

Judge Miller went on to state, however, that if a case covered by the Act is filed in federal court without being submitted to a medical review panel as required by the Act, the complaint states no claim upon which relief can be granted under Indiana law, and must be dismissed. *Id.; see also Beach v. Owens-Corning Fiberglas Corp.,* 728 F.2d 407, 408 (7th Cir. 1984) (where district court ruled that it was without jurisdiction to hear case because of exclusive jurisdiction of administrative board, proper analysis is that plaintiffs failed to state claim upon which relief could be granted).

This court finds Judge Miller's reasoning persuasive, and will analyze the present motion under RULE 12(b)(6) rather than RULE 12(b)(1). In doing so, the court accepts the well-pleaded facts in the complaint as true, *Santana v. Cook Cnty. Bd. of Review,* 679 F.3d 614, 620 (7th Cir. 2012), and draws all reasonable inferences in plaintiff's favor, *Senne v. Village of Palatine, Ill.,* 695 F.3d 597, 601 (7th Cir. 2012).

The Act provides that any malpractice action against a health care provider may not be commenced before an opinion has been rendered by a state medical review panel. IND. CODE § 34–18–8–4. It is undisputed that when this action was commenced,

no such opinion had been rendered. Thus, if the plaintiff's state law claim is properly characterized as a "malpractice" claim, it must be dismissed.

The Act defines malpractice as follows:

"Malpractice" means a tort or breach of contract based on health care or professional services that were provided, or that should have been provided, by a health care provider, to a patient.

IND. CODE § 34–18–2–18. Thus, medical malpractice is the breach of the duty owed by a healthcare provider to its patient. *Madison Ctr., Inc., v. R.R.K., et al.,* 853 N.E.2d 1286, 1288 (Ind. Ct. App. 2007). The duty arises from the contractual relationship entered into between the provider and the patient. *Id.* The Indiana Supreme Court has defined the duty as an implied contract that the provider possesses the ordinary knowledge and skill of its profession and will utilize such attributes in a reasonable, diligent, and careful manner in undertaking the care and treatment of its patient. *Webb v. Jarvis,* 575 N.E.2d 992, 996 (Ind. 1991).

The fact that the alleged misconduct occurs in a facility that provides healthcare does not, by itself, make the claim one for malpractice. *Doe ex rel. Roe v. Madison Ctr. Hosp.,* 652 N.E.2d 101, 104 (Ind. Ct. App. 1995). Nor does the fact that the injured party was a patient at the facility or of the provider, create such a claim. *Collins v. Thakkar,* 552 N.E.2d 507, 511 (Ind. Ct. App. 1990). Instead, the test is whether the claim is based on the provider's behavior or practices while "acting in his professional capacity as a provider of medical services." *Id.* at 510.

Indiana courts have held that the Act is not limited to doctors' direct treatment and diagnosis of patients; rather, the Act extends to seemingly administrative tasks that are intricately related to patient care. For example, the Indiana Supreme Court held that the maintenance of health records is covered under the Act because "the skillful, accurate, and ongoing maintenance of test and treatment records bears strongly on subsequent treatment and diagnosis of patients." *Howard Reg'l Health Sys. v. Gordon,* 952 N.E.2d 182, 186 (Ind. 2011). Similarly, the Indiana Court of Appeals held that the propriety of a doctor's decision to sign papers authorizing a patient's commitment to a mental hospital is a question that first should be submitted to a medical review panel under the Act. *Detterline v. Bonaventuram,* 465 N.E.2d 215, 219 (Ind. Ct. App. 1984).

However, Indiana courts have declined to extend the Act to cover lawsuits stemming from unauthorized communications by a health care provider to third parties regarding the patient's medical condition. For example, in *H.D. v. BHC Meadows Hospital, Inc.,* the Indiana Court of Appeals held that a claim based on a therapist's decision to send a fax containing information about an adolescent patient's mental health to the patient's school was not a "malpractice" claim subject to the Act. 884 N.E.2d 849, 855-56 (Ind. Ct. App. 2008). The court noted that the Act was "'intended to exclude . . . conduct of a provider unrelated to the promotion of the patient's health or the provider's exercise of professional expertise, skill or judgment.'" *Id.* at 855 (quoting *Collins,* 552 N.E.2d at 510-11). The court further reasoned that the purpose of the Act – to provide an expert determination on the question of whether a provider complied

with the appropriate standard of care – was not served under the circumstances, since "an average juror is equally equipped" to consider the elements of a state law privacy claim. *Id.* at 856.

This case is more like *BHC Meadows,* and less like *Howard Regional* or *Detterline.* While it is not clear precisely why Dr. Rodarte communicated information about plaintiff's medical condition to plaintiff's employer, it cannot be reasonably inferred from the facts alleged in the complaint that the communication was made in furtherance of providing health care or professional services to plaintiff. Unlike memorializing medical observations in a chart or authorizing a patient's commitment, sharing a patient's medical condition with a third party requires no "professional expertise, skill or judgment." *Collins,* 552 N.E.2d at 510. Rather, Dr. Rodarte's alleged acts of conveying information about plaintiff's medical condition to plaintiff's employer are more akin to a therapist sending a fax containing information about a patient's medical condition to the patient's school. *See BHC Meadows,* 884 N.E.2d at 854-56.

Further, like the court in *BHC Meadows,* this court fails to see why a medical review panel is necessary to determine the standard of care owed by Dr. Rodarte to plaintiff with respect to plaintiff's privacy. 884 N.E.2d at 855-56. As the *BHC Meadows* court noted, "an average juror is equally equipped" to consider the elements of a state law privacy claim as a panel of medical experts. *Id.* at 856. Accordingly, the court finds that plaintiff's claim against Dr. Rodarte and the Hammond Clinic should not be

classified as "medical malpractice," is not subject to the provisions of the Act, and will not be dismissed.

For the foregoing reasons, defendants' motion to dismiss is **DENIED** (DE # 40).

**SO ORDERED.**

Date: February 14, 2013

                         s/ James T. Moody
                         JUDGE JAMES T. MOODY
                         UNITED STATES DISTRICT COURT